Daniel J. McAvoy, J.
This is a motion by the defendants for a summary judgment dismissing plaintiffs’ complaint in a negligence action on the ground that the action has no merit.
The plaintiff, Stuart L. Williams, was injured while performing on a device known as a trampoline. It was one of several maintained by the defendants in the fenced-in area at the rear of an ice cream stand operated by them on Court Street in the City of Binghamton, New York. Access to the trampolines was gained by purchasing a ticket for their use at the ice cream stand.
Sometime in the late evening of July 11, 1961 plaintiff with another young man and two female companions entered upon the premises, after purchasing three tickets from Mr. Lombardini for the use of the trampolines. Williams admits in his answering affidavit that he read a notice and certain rules which were posted as to the use of the trampolines. The notice stated: “ Use trampolines at your own risk. We are not responsible for accidents ”, and one of the rules read: “Do not attempt difficult tricks.”
After the purchase of the tickets plaintiff and two of his companions went to the trampolines and started bouncing on them. These devices were approximately 6 feet by 12 feet in size. The bed or mat was attached to metal springs which in turn were connected with a steel plate on top of a framework of 2 feet by 10 feet planks. The metal plate and framework were covered by a,padding of foam rubber but the springs were exposed. The bed of the trampoline was stretched over a pit about 39 inches deep. When one jumped on this surface it caused him to rebound into the air. It appears from the defendants’ examinations before trial that various simple maneuvers might be performed thereon, such as jumping up and down — which exercise was known as a foot bounce. One could also perform so-called knee drops, seat drops, front drops and back drops.
*148 The plaintiff, after using the trampoline for about half an hour, undertook to perform a front flip or somersault and was thrown off balance and injured. He described the accident in his examination before trial as follows: “ Well, I was trying to do a front flip, one complete flip, and land on my feet, and I went over about 90 degrees too far and my nose hit on, well, off the edge of the mat on the edge of the pit, whatever it was, a board or steel plate or something. — I bounced up and down a couple of times — then I just did a somersault in the air, and then straightened out and tried to land on my feet ”.
He further testified that he knew of nothing that was defective on the trampoline itself and as far as he was concerned, it was in good working order. It does not appear that there was anything about its construction that concealed any dangers or defects.
The defendants’ motion to dismiss the complaint is based upon the contention that plaintiff assumed the risk incidental to the use of this device, which was readily apparent to all who used it . “ The test of whether plaintiff assumed the risk of a danger from which injury resulted is whether an ordinary prudent person would under the same or similar circumstances have incurred the risk which plaintiff’s conduct involved. * * *
In order to invoke the doctrine of assumed or incurred risk, it is essential that the risk or danger shall have been known to, and appreciated by, plaintiff or that it shall have been so obvious that he must be taken to have known and comprehended it.” (See 65 C. J. S. Negligence, § 174, pp. 851-852 and cases cited.)
There may be circumstances where the question of whether or not the risk was obvious is one of fact for the jury. (Barrett v. Builders’ Patent Scaffolding Co., 311 Mass. 41.) However, where it indisputably appears that an ordinary prudent person would under the same or similar circumstances not have incurred the risk which plaintiff’s conduct involved, then the question becomes one of law for the court. (See Nauman v. Central & Lafayette Realty Co., 137 N. J. L. 428; Bianchi v. South Park Presbyterian Church, 123 N. J. L. 325, 334.) "[A] ssumption of risk # * * consists in the actual doing of the deed with foresight of the consequences.” (See McEvoy v. City of New York, 266 App. Div. 445, 448).
Here, the plaintiff was sui juris, being a young man 19 years of age and a student at Yale University. One of his age, education and intelligence must be presumed to have foreseen that when he propelled himself through the air in a forward flip or somersault by means of this device, he ran the risk of landing either on the framework or beyond in such a fashion as to cause injury.
*149 Certainly the danger was obvious to one reasonably mindful of his own safety. "What he did was entirely voluntary and for the personal thrill involved in the exercise so undertaken. The assumption of the risk negatives any duty which might otherwise have been owed him by the defendants.
The same principle of law is involved here as in the frequently quoted case of Murphy v. Steeplechase Amusement Co. (250 N. Y. 479, 482) where Cardozo, Ch. J., stated: “ Volenti non fit injuria. One who takes part in such a sport accepts the dangers that inhere in it so far as they are obvious and necessary, just as a fencer accepts the risk of a thrust by his antagonist or a spectator at a ball game a chance of contact with the ball.” (See, also, Kanofsky v. Brooklyn Jewish Center, 265 N. Y. 634; Cambareri v. Board of Educ. of City of Albany, 246 App. Div. 127, affd. 283 N. Y. 741; Scala v. City of New York, 200 Misc. 475.)
The plaintiff here voluntarily assumed the obvious risk inherent in the maneuver which he had undertaken. Therefore, the defendants’ motion to dismiss the complaint and for summary judgment in their favor is granted.
While the courts are loathe to grant summary judgment in negligence cases, the remedy should be exercised without hesitation in cases where there is no meritorious cause of action or defense. The very purpose of the remedy is to relieve congested court calendars and to eliminate unnecessary expense to the litigants and the public.